Fiacre *v.* Chapman.

JOHN N. FIACRE, executor,

*v.*

EDWARD BROWN CHAPMAN and others.

A second mortgagee paid certain taxes and assessments imposed on the premises, after a sale to the city for their non-payment, and took an assignment of the certificates of sale, such taxes and assessments being, by the charter, a lien prior to other encumbrances. On foreclosure of the first mortgage,—*Held,* that he was entitled, by equitable subrogation, to the city's lien, and to re-imbursement for ·whatever sums he had paid for legal and valid claims of the city, and that he could obtain relief by answer.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. W. A. Lewis,* for complainant.

*Mr. C. S. See,* for William R. Mitchell, holder of the second mortgage.

THE CHANCELLOR.

The bill is filed to foreclose a mortgage (the first) on premises in Jersey City, and the holder of the second mortgage is made a party. He answers, claiming a lien paramount to that of the first mortgage, for certain annual taxes, water rents and sewer taxes, and an assessment for regulating the sidewalk (and interest and costs thereon), which were imposed on or in respect to the mortgaged premises, and which taxes and rents were paid by him after sales of the property to the city for non-payment thereof. He claims to have an assignment of the certificates of sale, and of the demand for the assessments, but he produces no formal assignment thereof and proves none. He relies on the unsigned memorandum, "Assigned to Wm. R. Mitchell," written across each of the receipts for the money paid by him, as evidence of the assignments. He has no declaration of sale for the premises. He produces no proof to establish the validity of the sales, or even the fact that they were made, nor the levying or assessment of the taxes or water rents, nor of the making of the assessment for regulating the sidewalks. He produces nothing but the certificates of sales, and the bill of the assessment, with the receipts appended thereto, respectively, and the memorandum before mentioned written across them. The complainant alleges that the sales are invalid, and it is not denied.

But while the defendant has not established a paramount title under the sales (indeed, he claims none, but only a lien), he has shown that he has paid, by way of redemption, taxes assessed upon the property, and which, under the charter, were a prior lien to the complainant's mortgage, and for non-payment whereof the property might have been sold, and under the sale a title superior to the complainant's mortgage given. *P. L. 1872 p. 1155 § 152; Hardenburgh* v. *Converse, 4 Stew. Eq. 500.* In equity he is entitled to the benefit of the lien. *Schatt* v. *Grosch, 4 Stew. Eq. 197.*

It would be far from just to give the complainant the benefit of these payments at the expense of the second

mortgagee. They amount to over $900. If any of the money paid by the latter was paid for unlawful penalties, he cannot recover it in this suit; and if any of the assessments were illegal, he ·cannot recover them. *Atwater* v. *West, 1 Stew. Eq. 361.* But he may recover what he has paid for lawful taxes and assessments (and lawful interest and costs thereon), which were liens upon the property, and which it was necessary to pay to save the property from sales under paramount liens, and he may recover under his. answer.

But it is urged, on behalf of the complainant, that though the taxes were a lien on the land paramount to the first mortgage, yet the lien is discharged by the payment. If it be conceded that the lien was discharged by the payments, that will not deprive Mr. Mitchell of his right of re-imbursement for the payments out of the property in advance of the lien of the complainant's mortgage. They were in no sense voluntary. It is proved that he made them, relying on the lien for his indemnity. He, indeed, was not compelled to make them by any duty he owed the complainant, but, in order to relieve the property from the paramount lien of the taxes and protect it for himself against the consequences thereof, he was constrained to make them. Having thus preserved the property to the complainant as well as himself, he is entitled to equitable subrogation, and, under the circumstances, a cross-bill is not necessary to give him the benefit of that principle. An answer, indeed, can, as a general rule, pray nothing except to be dismissed the court. But there are cases in which it may properly set up a defence in the nature of a claim for substantial relief against the complainant, and the relief may be accorded thereon. *Dayton* v. *Melick, 12 C. E. Gr. 362.*

In this case, where the proceeding is *in rem*, and the subsequent encumbrancer sets up in his answer a paramount claim for expenses necessarily paid to save the property, where no exception was filed to his answer, and he has taken

Schuh *v.* City of Newark.

testimony on the subject, where the complainant has had full opportunity to do likewise, and the cause has proceeded to final hearing, it would not be just to deny him the relief he asks.

Again, it is within the power of the court, under the circumstances, to direct that a cross-bill be filed, if necessary to do justice. *2 Dan. Ch. Pr. 1550.*

There will be a reference to a master, and the amount to be allowed to the second mortgagee for his payment for taxes will be one of the subjects of the reference.